<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

ROMULUS ANTHONY,

        Petitioner,

    v.

WAYNE MULLER, et al.,

        Respondents.

Civil Action No. 11-3325 (JLL)

O P I N I O N

---

APPEARANCES:

    ROMULUS ANTHONY, Petitioner, <u>Pro Se</u>
    # 242606
    Hudson County Correctional Center
    35 Hackensack Avenue
    Kearny, New Jersey 07032

    JORDAN MILOWE ANGER, ESQ.
    OFFICE OF THE U.S. ATTORNEY
    970 Broad Street, 7th Floor
    Newark, New Jersey 07102
    Counsel for Respondents

**LINARES, District Judge**

    Petitioner, Romulus Anthony ("Petitioner"), is currently being detained by the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE") at the Hudson County Correctional Center in Kearny, New Jersey, pending his removal from the United States.[1] On or about June 8, 2011, Petitioner

---

[1] Effective March 1, 2003, the Immigration and Naturalization Service ("INS") ceased to exist as an agency of the Department of Justice, and its functions were transferred to the Department of Homeland Security ("DHS"). <u>See</u> Homeland

filed this Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, in which he challenges his continuing detention pending his removal from the United States as unconstitutional. Petitioner paid the $5.00 filing fee. With his petition, Petitioner also filed an application for an Order to Show Cause and for appointment of counsel. Petitioner brings this action against Oscar Aviles, Warden at Hudson County Correctional Center; Wayne Muller, Assistant Field Office Director for Detention and Removal; Ruben Perez, Assistant Field Office Director for Detention and Removal; Christopher Shanahan, New York Field Office Director for Detention and Removal; John T. Morton, Assistant Secretary of the United State Immigration and Customs Enforcement ("ICE); Janet Napolitano, Secretary of the DHS; and Eric Holder, United States Attorney General, as the named party respondents (hereinafter referred to as "the Government") in this action.

The Government provided a response to the petition on or about September 16, 2011, together with the relevant record. (Docket entry no. 8). Petitioner filed a reply on or about October 3, 2011. (Docket entry no. 9). For the reasons stated below, this petition for habeas relief will be granted.

---

Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (Nov. 25, 2002). The Immigration and Customs Enforcement agency ("ICE") of the DHS is responsible for the interior investigation and enforcement functions that formerly were performed by the INS.

2

I.   BACKGROUND

Petitioner states that he is a native and citizen of Haiti, and claims to have entered the United States at an unknown place and on an unknown date, which suggests that he entered this country illegally. (Petition at ¶ 9; the Government's Declaration of Christopher Harrigan at ¶ 3). On or about June 26, 1990, Petitioner was served with an Order to Show Cause and Notice of Hearing ("NTA"), charging that he was subject to removal from the United States pursuant to § 241(a)(2) of the Immigration and Nationality Act ("INA"). (Harrigan Decl., Ex. A). Those removal proceedings were administratively closed while Petitioner was incarcerated. They were later re-opened and moved to the Ulster County Correctional Facility in Napanoch, New York, where Petitioner was then incarcerated. (Harrigan Decl, ¶ 6).

Petitioner admits to having a criminal history including convictions for first and second degree robbery, and petit larceny. His sentences have ranged from probation to a term of life imprisonment. (Pet., ¶ 10; Harrigan Decl., ¶ 4 and Ex. B).

In a letter dated January 31, 2008, from Petitioner to the Immigration Judge ("IJ"), Petitioner "acknowledge[d] that failure to appear at the immigration hearing which is scheduled for 2-4-08 in Ulster County could result in an order of removal." (Id., Ex. E). Consequently, on February 4, 2008, IJ Sagerman ordered Petitioner removed and deported from the U.S. to Haiti because he

was not present at the merits hearing for his "request for relief from deportation." (Harrigan Decl., Ex. D). Petitioner did not appeal from the removal order.

On July 21, 2010, Petitioner was placed in ICE custody, after a removal order was issued. (Pet., ¶ 9; Harrigan Decl., ¶ 8). On October 15, 2010, Petitioner was released from ICE custody on an Order of Supervision. (Pet., ¶ 9; Harrigan Decl., Exs. F and G). The Government states that Petitioner was released "in full understanding and compliance with Zadvydas - because after the earthquake it became apparent that removals to Haiti were no longer likely in the reasonably foreseeable future." (Respondents' Brief at pg. 8, Declaration of Mark R. Lenox[2] at ¶ 5).

Thereafter, on December 6, 2010, the ICE issued a Notice of Revocation of Release to Petitioner. (Pet., ¶ 9; Harrigan Decl., ¶ 11 and Ex. H). The Notice informed Petitioner that he was detained "because there is now a significant likelihood of your removal in the reasonably foreseeable future." (Harrigan Decl., Ex H). The Government explains that Petitioner's revocation of release under supervision was done "because the United States had

---

[2] Mr. Lenox is the Deputy Assistant Director for the USDHS, ICE Enforcement and Removal Operations, Removal Management Division. He is directly responsible for the management of the Removal Management Division and the Travel Document Unit ("TDU"). The TDU is "responsible for liasing Haitian citizens and nationals who have been ordered removed from the United States." (Lenox Decl., ¶ 3).

4

resumed negotiations with [the Government of Haiti] regarding the resumption of removals and [the Government of Haiti] indicated that the flights would resume shortly." (Resp. Brief at pg. 8).

Petitioner alleges that a travel document was requested by the ICE on December 8, 2010, but there has been no travel document issued to date and none is expected to be issued in the reasonably foreseeable future. (Pet., ¶ 10). Petitioner claims that he does not pose a flight risk or a danger to the community, as he was previously released on an Order of Supervision on October 15, 2010. (Id.). Petitioner further states that he immigrated from Haiti to the United States in or around 1983 at the age of 18. He has no family ties to Haiti. His entire family now resides legally in the United States. (Pet., at pg. 12).

The Government alleges that, since Petitioner's detention, he has been afforded periodic custody reviews. Specifically, on March 9, 2011, Petitioner received his 90-day review. (Harrigan Decl., ¶ 12 and Ex. I). The Decision to Continue Detention, dated March 7, 2011, notes that Petitioner failed to provide any documentation to establish that Petitioner "would not pose a threat to the public or a flight risk" despite being given the opportunity to do so. (Id.). Another custody review occurred on June 8, 2011. (Harrigan Decl., ¶ 13 and Ex. J). The Decision to Continue Detention, dated June 8, 2011, stated that Petitioner's

"removal from the United States is expected in the rasonab[ly](sic) Foreseeable future." (Id.).

The Government further alleges that charter flights repatriating Haitian nationals or citizens resumed on January 20, 2011, and that since that date, six charter flights repatriating a total of 179 Haitians have occurred. Moreover, such charter flights are expected to occur at least monthly. (Lenox Decl., ¶ 7).

On August 19, 2011, Petitioner was transferred to the Basile Detention Center in Oakdale, Louisiana. (Harrigan Decl., ¶ 14). The transfer allegedly was made to facilitate an interview between the Haitian consulate and Petitioner. It was scheduled to take place in October 2011. Consequently, the Government maintains that issuance of Petitioner's travel documents is forthcoming and that he will be removed to Haiti shortly. (Id., ¶ 15). Mr. Lenox also states that once travel documents are issued, Petitioner will be on the next charter flight to Haiti. (Lenox Decl., ¶ 11).

October 2011 has come and gone and Petitioner is still awaiting his removal while detained under ICE custody. On November 14, 2011, this Court received correspondence from Petitioner. (Docket entry no. 10). In his letter, Petitioner relates that, on or about August 18, 2011, he and a dozen Haitian nationals and citizens were moved from the Hudson County

6

Correctional Center ("HCCC") in New Jersey to the Basile Detention Center in Oakdale, Louisiana for an interview with the Haitian consulate. Although Petitioner's interview was scheduled for October 2011, as sworn by Mr. Harrigan, Petitioner was inexplicably returned to the HCCC in New Jersey on September 18, 2011. (Petitioner's November 7, 2011 letter at Docket entry no. 10).

Petitioner remains in ICE custody at the HCCC at the writing of this Opinion.

## II. DISCUSSION

### A.   Standard of Review

Petitioner seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241(c)(3). That section states that the writ will not be extended to a prisoner unless "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Under 28 U.S.C. § 2243, "[a] court ... entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto."

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520

(1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

B.  Jurisdiction to Grant Habeas Relief

As stated earlier, Petitioner brings this habeas action under 28 U.S.C. § 2241(c)(3), which requires that the petitioner show that "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Court has subject matter jurisdiction over this petition because Petitioner is being detained within its jurisdiction at the time he filed his petition, and because Petitioner asserts that his continued detention is not statutorily authorized and is constitutionally impermissible because it violates due process under the Fifth Amendment, as set forth in Zadvydas.

C.  Relevant Statutory and Case Law Authority

In this case, there is no dispute that Petitioner's detention is statutorily governed by 8 U.S.C. § 1231, because he is subject to a final order of removal. Once a removal order becomes "final," the alien's "removal period" begins to run. Specifically, the "removal period" starts on the latest of the following (1) the date when the order of removal issued by an IJ

8

becomes administratively final (that is, appeal to BIA was either taken and ruled upon in the sense that the appeal was denied, or the time to file such appeal simply expired); or (2) if the removal order is judicially reviewed and if a court orders a stay of the removal, the date of the court's final order, or (3) if the alien is detained or confined (except under an immigration process), the date when the alien is released from confinement. See 8 U.S.C. § 1231(a)(1)(B).

Under Section 1231(a)(1)(A), the government has a 90-day "removal period" to remove an alien. Detention during this 90-day removal period is mandatory. Section 1231(a)(1)(c), however, provides that this 90-day removal period may be extended, and the alien may remain in detention during such extended period, if the alien "acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(c).

Moreover, even after the 90-day "removal period," the government may further detain the alien under 8 U.S.C. § 1231(a)(6). However, the Supreme Court has held that aliens may be detained under § 1231(a)(6) only for "a period reasonably necessary to bring about that alien's removal from the United States." Zadvydas v. Davis, 533 U.S. 678, 689 (2001). Recognizing that its holding would lead to difficult judgment calls in the courts, the Supreme Court "for the sake of uniform administration in the federal courts" recognized a six-month

"presumptively reasonable period of detention." Id. at 700-01. However, after establishing this "presumptively reasonable period of detention," the Supreme Court stressed that

> after this 6-month period, o[nly if] the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

Id. at 701.

The alien bears the initial burden of establishing that there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," after which the government must come forward with evidence to rebut that showing. Zadvydas, 533 U.S. at 699-701. See also, e.g., Xi v. U.S. I.N.S., 298 F.3d 832, 839-40 (9th Cir. 2002); Kacanic v. Elwood, 2002 WL 31520362 (E.D. Pa. Nov. 8, 2002); Fahim v. Ashcroft, 227 F. Supp.2d 1359, 1367-68 (N.D. Ga. 2002); Lema v. U.S. I.N.S., 214 F. Supp.2d 1116, 1117-18 (W.D. Wash. 2002), aff'd, 341 F.3d 853 (9th Cir. 2003).

Moreover, no language in Zadvydas excluded or limited the operation of the tolling-like function enunciated in 8 U.S.C. § 1231(a)(1)(c)("The removal period shall be extended beyond a

10

period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal."). Consequently, an alien who, during his presumptive six-month Zadvydas-based period, takes actions delaying his removal, cannot demand his release upon expiration of these six months. See, e.g., Wang v. Carbone, No. 05-2386 (JAP), 2005 WL 2656677 (D.N.J. Oct. 17, 2005)(calculating the presumptive period excluding the period of non-cooperation and relying on Riley v. Greene, 149 F. Supp.2d 1256, 1262 (D. Colo. 2001) and Sango-Dema v. District Director, 122 F. Supp.2d 213, 221 (D.Mass. 2000)). Rather, the period affected by the alien's actions is excluded from the six-month presumptive period articulated in Zadvydas, causing a quasi-tolling.

Thus, "Zadvydas does not save an alien who fails to provide requested documentation to effectuate his removal. The reason is self-evident: the detainee cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future if the detainee controls the clock." Pelich v. INS, 329 F.3d 1057, 1060 (9th Cir.2003)(cited with approval in U.S. ex rel. Kovalev v. Ashcroft, 71 Fed. Appx. 919, 924 (3d Cir. 2003).

11

After <u>Zadvydas</u>, the DHS enacted regulations to meet the criteria establish by the Supreme Court to prevent indefinite detention pending removal. These regulations are codified at 8 C.F.R. § 241.4 ("Continued detention of inadmissible, criminal, and other aliens beyond the removal period"). Under these post-order custody review ("POCR") regulations, an alien detainee is entitled to review of his custody status before the expiration of the removal period, <u>see</u> 8 C.F.R. § 241.4(k)(1), and at annual intervals thereafter, <u>see</u> 8 C.F.R. § 241.4(k)(2). In addition, the alien has the right to request interim custody reviews not more than every three months in the time interval between annual reviews. <u>See</u> 8 C.F.R. § 241.4(k)(2)(iii).

D. <u>Continued Detention Is Now Unconstitutional</u>

Preliminarily, this Court finds that Petitioner has met his burden of showing that his removal to Haiti is not likely in the reasonably foreseeable future. Under 8 U.S.C. § 1231(a) and <u>Zadvydas</u>, Petitioner must provide evidence to the Court which shows that he has "good reason to believe that there is no significant likelihood of [his] removal in the reasonably foreseeable future." <u>Zadvydas</u>, 533 U.S. at 681. At that point, the Government must then provide evidence to rebut petitioner's showing. <u>Id</u>. Here, Petitioner has shown that, since December 8, 2010, the Government has not been able to obtain a travel document for Petitioner through no fault of Petitioner.

12

Petitioner states that he has cooperated with the Government in its effort to remove him. Moreover, the Government has failed to facilitate Petitioner's removal by transferring him to Oakdale, Louisiana and then back to New Jersey before a scheduled interview with the Haitian consulate.

This Court finds that the Government has not sufficiently rebutted Petitioner's showing. The Government simply argues that removal is likely once travel documents are issued. However, the Government has been somewhat disingenuous in its representations. Petitioner's transfer to Louisiana for a meeting with the Haitian consulate appears to have been a ruse, because he was transferred back to New Jersey before the interview could take place. The Government also implies that Petitioner has not been cooperative because he has not provided the date and manner of his entry to the United States. However, the mere fact that he entered this country illegally does not show that he has been uncooperative in effecting his removal from the United States. See Abdel-Muhti v. Ashcroft, 314 F. Supp.2d 418 (M.D.Pa. 2004); see also Seretse-Khama v. Ashcroft, 215 F. Supp.2d 37 (D.D.C. 2002). In this case, there are no allegations or evidence that Petitioner has otherwise tried to delay or impede his removal in any way.

Consequently, this Court finds that the Government has not established a sufficient basis on which to detain Petitioner indefinitely, and have failed to rebut Petitioner's claim that his removal is not reasonably foreseeable. See Abdel-Muhti, 314

F. Supp.2d at 430-31. See also Mitchell v. Gonzales, Civ. No. 4:06-333, 2007 WL 121348 (N.D.Fla. Jan. 12, 2007); Koljenovic v. Ashcroft, Civ. No. 3:05-1109, 2006 WL 3325650 (M.D.Pa. Oct. 27, 2006); Seretse-Khama, 215 F. Supp.2d at 47-52; Clark v. Ashcroft, No. Civ.A. 03-3320, 2003 WL 22351953 (E.D. Pa. Sept. 16, 2003).

It has been one year since Petitioner was taken into custody after his order of removal became final. The Government has been unsuccessful in obtaining a travel document from Haiti through no fault of Petitioner. Moreover, Petitioner previously had been released on an Order of Supervision, and there are no changed circumstances that would prevent Petitioner's release on an Order of Supervision at this time. Therefore, based on Zadvydas, Petitioner's continued detention is no longer presumptively reasonable. Petitioner has shown, and the Government has failed to rebut, substantial evidence that his removal is unlikely in the reasonably foreseeable future.

Therefore, this Court finds that Petitioner is entitled to immediate supervised release pending his removal. Inadmissible or criminal aliens, such as Petitioner here, must be subject to terms of supervision if released pending removal. See 8 U.S.C. § 1231(a)(6). General terms of supervision are prescribed under 8 U.S.C. § 1231(a)(3), and require the alien: (A) to appear before an immigration officer periodically for identification; (B) to submit, if necessary, to a medical and psychiatric examination at the expense of the United States Government; (C) to give

information under oath about the alien's nationality, circumstances, habits, associations, and activities, and other information the Attorney General considers appropriate; and (D) to obey reasonable written restrictions on the alien's conduct or activities that the Attorney General prescribes for the alien." 8 U.S.C. § 1231(a)(3)(governing supervision after removal period). Therefore, the Respondents will be directed to release Petitioner from custodial detention under such terms and conditions deemed necessary pursuant to 8 U.S.C. §§ 1231(a)(3), (6), as it had previously done when Petitioner was released on an Order of Supervision on October 15, 2010.

## CONCLUSION

For the reasons set forth above, the Court will grant the petition for a writ of habeas corpus under 28 U.S.C. § 2241, and the Court will issue an Order directing Respondents to immediately release Petitioner subject to terms and conditions of supervision deemed appropriate pursuant to 8 U.S.C. §§ 1231(a)(3),(6). An appropriate order follows.

JOSE L. LINARES
United States District Judge

Dated: 12/19/11

15